RONALD P. RYAN, *Respondent*, v. MICHAEL K. WESTGARD *et al.*, *Appellants*.

*Rutherford, Kargianis & Austin* and *Samuel C. Rutherford,* for appellants.

*Levinson, Friedman, Vhugen, Duggan & Bland* and *Ronald J. Bland,* for respondent.

CALLOW, J.—Michael K. Westgard, defendant, appeals a jury verdict of $145,000 awarded in favor of Ronald P. Ryan, plaintiff, for injuries sustained in an automobile accident.

On February 22, 1972, at approximately 10:25 p.m., the plaintiff was driving a 1968 Volkswagen north in the center lane of Interstate 5. His speed was approximately 60 m.p.h. He had been following the vehicle immediately in front of him for some time at a distance of 100 feet or better when he saw it suddenly change lanes. Immediately apprehensive, the plaintiff also attempted to change lanes but could not because of traffic. In the next instant, he collided with the rear of the defendant's pickup truck which was also traveling north in the center lane.

The plaintiff testified at the trial that he glimpsed the defendant's truck prior to the accident but was uncertain whether he had seen lights on it. The plaintiff also stated that he did not apply his brakes until just before the im-

pact. He testified that it was his impression that he could have stopped if the vehicle immediately in front of him, which had swerved into another lane, instead had attempted to stop. There was expert testimony that an automobile traveling at 60 m.p.h. would take approximately 300 feet to stop but that the recommended following distance for cars traveling at 60 m.p.h. was approximately 120 feet.

The defendant testified that the collision occurred as he lost speed when he ran out of gas in his auxiliary tank and was switching to his main tank.[1] There was a conflict in the testimony over the speed of the defendant at the time of the accident. The defendant in his initial statement had said that he had slowed to between 5 and 10 m.p.h. In his trial testimony, he was unsure of his speed but estimated he was traveling at least 30 m.p.h. There was also evidence that the defendant was under the influence of intoxicating liquor at the time of the accident. Other evidence showed that as a result of the accident, the defendant had pleaded guilty to hit and run and negligent driving. Following the verdict, the defendant's motions for judgment n.o.v. and for a new trial were denied.

The issues raised on appeal concern (1) claimed jury misconduct; (2) when is a following driver contributorially negligent; (3) whether the instruction on the duty of a driver to signal on stopping was proper; (4) the refusal of the defendant's proposed instruction on speed and using the impact and violence of a collision to determine speed; (5) the admissibility of the defendant's pleas of guilty to negligent driving and hit and run arising out of the accident and whether the court should have allowed these guilty pleas to have been argued to the jury; and (6) the claimed excessiveness of the verdict.

I

THE CONDUCT OF THE JURY

The defendant moved for a new trial alleging misconduct

---

[1] The testimony indicated that the practice was to exhaust the supply in the auxiliary tanks first before switching to the main tank whose capacity was indicated on the gasoline gauge.

on the part of certain jurors and submitted affidavits in support of the motion. These affidavits reflected that various jurors had spoken of their own experiences with truck gas tanks, their feelings about the defendant pleading guilty to the traffic offense and the ability of the defendant to respond to a large verdict. The trial judge denied the motion for a new trial stating that the affidavits of the jurors were insufficient to set aside the verdict.

In considering affidavits concerning jury misconduct filed following a verdict, those portions of the affidavits should be discarded which question or impute error to the verdict itself and only those facts should be considered which relate to juror misconduct which in all likelihood influenced the verdict. A juror's statements about the effect the remarks of other jurors had upon his thought processes in arriving at his verdict may not be considered to set aside that verdict, but statements of fact about the misconduct of other jurors should be examined to determine if the misconduct was an element relied upon by the jury in its considerations. It is the function of the court to determine whether the remarks made by a juror probably had a prejudicial effect upon the minds of the other jurors and their verdict. Verdicts should be upheld and the free, frank and secret deliberation upon which they are based held sacrosanct unless (1) the affidavits of the jurors allege facts showing misconduct and (2) those facts support a determination that the misconduct affected the verdict. *Halverson v. Anderson*, 82 Wn.2d 746, 513 P.2d 827 (1973); *State v. Gobin*, 73 Wn.2d 206, 437 P.2d 389 (1968); *Gardner v. Malone*, 60 Wn.2d 836, 376 P.2d 651 (1962).

In the *Halverson* case, the court held that a statement of a juror concerning the possible prospective earnings of an injured minor if he could become an airline pilot or civil surveyor was misconduct. Under the *Halverson* rule, it is misconduct for a juror to place before his fellow jurors evidence which is not subject to objection, cross-examination, explanation or rebuttal. Thus, when a juror introduces into the discussion in the jury room his own un-

sworn testimony about matters that bear directly upon the material facts of the case at issue, as opposed to discussing an unrelated experience which might enlighten the discussion, such an act is misconduct.

The analysis of affidavits concerning jury misconduct and the resolution of the effect of juror discussion of matters outside the record is the province of the trial judge. As stated in *Halverson* on page 752:

> The effect which this evidence may have had upon the jury was a question which was properly determined in the sound discretion of the trial court which had observed all the witnesses and the trial proceedings and had in mind the evidence which had been presented. If the trial court had any doubt that the misconduct affected the verdict, it was obliged to resolve that doubt in favor of granting a new trial.

Nearly all the statements presented in the affidavits before the trial court are about matters which involved the thought processes of the jurors. These statements are insufficient to impeach their verdict. The situation presented in this case involved misconduct by the juror who discussed his own experience with truck gas tanks. This statement was made following a trial in which there had been a great deal of testimony on the subject, and there is no positive showing that the statement affected the verdict. The trial judge concluded without doubt that the affidavits did not show any misconduct which had in all probability affected the verdict. It was within his discretion to reach that determination.

## II

### CONTRIBUTORY NEGLIGENCE

■ The defendant contends that the plaintiff was contributorially negligent as a matter of law. He claims the evidence establishes negligence on the part of the plaintiff and bases his argument on the rule that as between two drivers traveling in the same direction, the following driver has the primary duty of avoiding a collision. We hold that the

jury could find from the evidence that the plaintiff was not contributorially negligent.

The duty of the following driver is expressed in *Miller v. Cody*, 41 Wn.2d 775, 778, 252 P.2d 303 (1953) as follows:

> Where two cars are traveling in the same direction, the primary duty of avoiding a collision rests with the following driver. In the absence of an emergency or unusual conditions, he is negligent if he runs into the car ahead. . . . The following driver is not necessarily excused even in the event of an emergency, for it is his duty to keep such distance from the car ahead and maintain such observation of that car that an emergency stop may be safely made.

(Citation omitted.) *See also Vanderhoff v. Fitzgerald*, 72 Wn.2d 103, 431 P.2d 969 (1967); *Felder v. Tacoma*, 68 Wn.2d 726, 415 P.2d 496 (1966). The following driver is to perform his duty of avoiding a collision with the preceding vehicle by allowing for those actions which should be anticipated under the circumstances. *Bonica v. Gracias*, 84 Wn.2d 99, 524 P.2d 232 (1974).

A following driver is not negligent as a matter of law when he collides with the preceding vehicle if the preceding vehicle stops suddenly and without warning at a place where a sudden stop is not to be anticipated. In such a situation, the jury must answer whether the following driver was traveling closer to the preceding vehicle or at a greater speed than reasonable care required under the circumstances. It is for the jury to decide whether the circumstances were such that a sudden stop or decrease of speed was to be anticipated. While the following driver has the primary duty of avoiding an accident, he is not guilty of negligence as a matter of law simply because he collides with a vehicle in front of him. *Vanderhoff v. Fitzgerald, supra; James v. Niebuhr*, 63 Wn.2d 800, 389 P.2d 287 (1964). As stated in *Vanderhoff* on page 106:

> A prima facie showing of negligence may be overcome by evidence that some emergency or unusual condition not caused or contributed to by the following driver caused

the collision, in which event the liability of the following driver becomes a jury question.

See also *Western Packing Co. v. Visser*, 11 Wn. App. 149, 521 P.2d 939 (1974).

A following driver is required to foresee the likelihood of sudden stops in front of him in some circumstances and not in others. *Felder v. Tacoma, supra; James v. Niebuhr, supra.* When a driver is traveling at the lawful speed limit in the center lane of a freeway, there is not an absolute requirement to presume that sudden stops or abrupt slowdowns will occur in front of him. In *Larson v. Thomashow*, 17 Ill. App. 3d 208, 213-14, 307 N.E.2d 707, 712 (1974), the court stated:

> The defendant asserts that Ronald Larson had a duty to be on the lookout for other automobiles moving or standing in the highway and to use every precaution to avoid a collision. . . . While we agree that such duties existed, this court is also cognizant of the decision in *Nei v. Contracting & Material Co.*, 93 Ill.App.2d 226, 236 N.E.2d 264, 1968. The court pointed out that there are numerous cases within this jurisdiction that have held that a person who collides with another in the rear is guilty of contributory negligence as a matter of law. However, it has also been established that such cases have to be decided on their own peculiar facts. The *Nei* decision is also authority for the proposition that the different conditions existing on modern urban highways must also be taken into account. The court stated:
> > "Therefore, the circumstances which have led courts to find negligence as a matter of law in rear-end collisions on other roadways are not necessarily controlling in rear-end collisions on high-speed, urban expressways."
> > *Nei, supra*, at 230; at 266.

(Citations omitted.) The jury could conclude from the evidence that the plaintiff was on a highway at a time when sudden stops or decreases in speed were not required to be anticipated.

The following driver testified that if the intermediate car had not swerved out but had stopped suddenly instead, he, the plaintiff, could have avoided hitting that vehicle. The

following driver also testified that he did not have a chance to avoid the defendant's vehicle because he was too close to it when he first saw it. The argument is presented that this testimony establishes that the plaintiff was following too closely for the speed at which the cars were traveling and proves contributory negligence.

The evidence when considered in the light most favorable to the prevailing party would support the conclusion that the plaintiff was following the car in front of him at a proper speed and distance until the moment that vehicle swerved out into the adjoining lane. Under that interpretation of the evidence available to the jury, the plaintiff was free of negligence until that instant. The court instructed the jury upon the duties of following drivers, speed requirements and emergency.[2] These instructions were not objected to and became the law of the case.

---

[2]"A statute provides that a driver shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the street or highway.

"Where one vehicle is following another vehicle, the primary duty of avoiding a collision rests upon the following driver. In the absence of an emergency or unusual condition, he is negligent if he runs into the car ahead. However, the following driver is not necessarily excused even in the event of an emergency, for it is his duty to keep such distance from the car ahead and maintain such observation of that car that he can make such emergency stop as may be required by reasonably foreseeable traffic conditions." (Instruction No. 8.)

"A statute provides that no person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing and he shall so control his speed as may be necessary to avoid colliding with others who are complying with the law and using reasonable care.

"The maximum statutory speed limit at the place here involved was 60 miles per hour." (Instruction No. 10.)

"A statute of the State of Washington provides:

"Compliance with speed requirements of this chapter under the circumstances set forth shall not relieve the operator of any vehicle from the further exercise of due care and caution as further circumstances shall require." (Instruction No. 11.)

"With respect to the affirmative defense of contributory negligence, the following principle is applicable:

"A person, who is suddenly confronted by a emergency through no

■ When one is confronted with a sudden peril not brought about in any way by his own negligence, he is not required to exercise the same judgment concerning his course of action as if time for reflection had existed. *Sandberg v. Spoelstra*, 46 Wn.2d 776, 285 P.2d 564 (1955); *Zook v. Baier*, 9 Wn. App. 708, 514 P.2d 923 (1973); *Woodiwiss v. Rise*, 3 Wn. App. 5, 471 P.2d 124 (1970); Restatement (Second) of Torts § 296 (1965); 7 Am. Jur. 2d *Automobiles and Highway Traffic* § 359 (1963). The jury could conclude that when the intermediate car swerved from in front of the plaintiff exposing the slowly traveling defendant, the plaintiff was confronted with a sudden emergency not contributed to by his own acts; and his actions thereafter were prudent under the circumstances.

In *Grapp v. Peterson*, 25 Wn.2d 44, 168 P.2d 400 (1946), it was held that when a car suddenly cuts in front of another car and stops abruptly placing the following car in a position of sudden peril, the following driver is entitled to an instruction on the emergency doctrine. Under the evidence, reasonable minds could differ as to whether the plaintiff was following too closely under the circumstances. The conclusion could be reached that the plaintiff was traveling at a sufficient distance behind the preceding vehicle, that he was not contributorially negligent to the instant that the defendant was exposed to his view, and that thereafter he acted in an appropriate manner in the face of the sudden emergency. *Vanderhoff v. Fitzgerald, supra; Johnson v. Watson*, 11 Wn.2d 690, 120 P.2d 515 (1941); Annot., 85 A.L.R.2d 613 (1962).

### III
### INSTRUCTION ON DUTY TO SIGNAL WHEN STOPPING

The trial court gave the following challenged instruction:

A statute provides:

No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal to the

---

negligence of his own and who is compelled to decide instantly how to avoid injury and who makes such choice as a reasonably careful person placed in such position might make, is not negligent even though he does not make the wisest choice." (Instruction No. 15.)

driver of any vehicle immediately to the rear when there is an opportunity to give such signal.

The defendant contends that the plaintiff was not the automobile "immediately" to the rear; and, therefore, the instruction was improper.

■ Reasonable minds could differ as to whether a signal had been given to signify a sudden decrease in speed or not, but the evidence presented was sufficient to support a jury finding that the defendant slowed precipitously and without warning. This was a factual determination for the jury, and it was appropriate to instruct them on the preceding driver's duty under the evidence. *Felder v. Tacoma, supra; James v. Niebuhr, supra; Trudeau v. Snohomish Auto Freight Co.,* 1 Wn.2d 574, 96 P.2d 599 (1939).

■ The statutory duty is a duty towards all following vehicles, and the statute is to be read according to its spirit and intent rather than given a narrow, literal meaning. *Kerr v. Hansen,* 140 Wash. 459, 249 P. 977 (1926). A driver must signal the vehicles behind him when he suddenly decreases speed. RCW 46.61.305 (3). The instruction, in the language of the statute, does not state that only the single vehicle nearest to the rear of the slowing driver is owed a warning but requires that a signal be given any closely following vehicle.

IV

PROPOSED INSTRUCTION ON SPEED AND VIOLENCE OF IMPACT

The defendant contends that the trial court erred in failing to give an instruction which would have informed the jury that they could consider the impact and violence of a collision in determining speed. The colloquy between court and counsel at the time of the taking of objections to the giving or the failure to give instructions reflects that the trial court believed that the objection was abandoned and that counsel accepted the instruction given on speed as adequate.[3] This may have been a misunderstanding, but it was not dispelled.

---

[3]The court instructed the jury: "A statute of the State of Washington provides:

■ An objection to the refusal to give a requested instruction must specifically state the grounds therefor, and specify the particular part of the refused proposed instruction claimed to have been wrongfully omitted. CR 51(f). The trial court is entitled to be informed of the grounds for objection, enlightened on the theories of law which support the objector's position and given the opportunity to correct a mistake in time to avoid unnecessary retrials. Unless this has taken place pursuant to CR 51(f), we cannot review an assignment of error based upon the refusal. *Tunney v. Seattle Mental Health Rehabilitation Institute*, 83 Wn.2d 695, 521 P.2d 932 (1974); *Holt v. Nelson*, 11 Wn. App. 230, 234, 523 P.2d 211 (1974).

## V
### Pleas Of Guilty

The defendant claims that evidence of his pleas of guilty to the negligent driving and hit and run charges which grew out of the collision with the plaintiff were improperly admitted and argued to the jury. At the commencement of the trial, court and counsel engaged in a lengthy colloquy concerning this issue in the absence of the jury. On direct examination, the plaintiff brought out that the defendant had been convicted in justice court of leaving the scene of the accident, had appealed the conviction to superior court and there pleaded guilty to the reduced, lesser charges of negligent driving and hit and run. The defendant explained at length on cross-examination the reasons for entering those pleas. Plaintiff's counsel in closing argument reminded the jury that the defendant had pleaded guilty to negligent driving.

■ A plea of guilty to a traffic charge may be shown as an admission against interest. *Billington v. Schaal*, 42 Wn.2d 878, 259 P.2d 634 (1953), citing *Reynolds v. Donoho*, 39 Wn.2d 451, 236 P.2d 552 (1951). *See also Fleming v.*

---

"Compliance with speed requirements of this chapter under the circumstances set forth shall not relieve the operator of any vehicle from the further exercise of due care and caution as further circumstances shall require."

*Seattle,* 45 Wn.2d 477, 275 P.2d 904 (1954); Annot., 18 A.L.R.2d 1287 (1951). As stated in *Konshuk v. Hayes,* 150 Wash. 565, 567, 273 P. 957 (1929):

> A plea of guilty to a charge of crime is in the nature of an admission. It is an admission of wrong on the part of a defendant so pleading. The jury are therefore entitled to consider it as it considers any other admission; they must view it in connection with the surrounding circumstances, and give it such weight as in their judgment the circumstances warrant. In this instance, the plea was evidence on the general issue, and it would have been error on the part of the court to restrict it as applicable solely to the credibility of the witness.

The plea of guilty to the negligent driving charge could be brought in to show the defendant's admission of negligence on his part at the time in question. It is true that the defendant faces a hard choice in whether to plead guilty to a charge that may be presented later in a civil case as an admission against himself or face the possibility of conviction of a charge that may expose him to greater penalties. The choice is his, however, to be made in the face of the risks involved; and he must face the consequences of his choice. The defendant explained his reasons for pleading guilty to the reduced charges to the jury. The jury was free to accept or reject his explanation.[4]

In addition, the conviction could be brought in under RCW 5.60.040 to affect the credibility of the defendant as a witness. The statute states in part:

> No person offered as a witness shall be excluded from giving evidence by reason of conviction of crime, but

---

[4] "A party's pleading in one case . . . is freely usable against him as an evidentiary admission in any other litigation, . . . Especially frequent is the use of a plea of guilty to a criminal charge offered as an admission in a later civil suit arising from the same transaction. While a plea of guilty to a traffic offense is in theory no different from a plea of guilty to other offenses, recognition that people plead guilty to traffic charges for reasons of convenience and without much regard to guilt and collateral consequences has led to some tendency to exclude them from evidence." (Footnotes omitted.) C. McCormick, *Evidence* § 265, at 635 (E. Cleary 2d ed. 1972).

such conviction may be shown to affect his credibility: . . . .

We sympathize with the current proposals that only proof of those crimes which involve honesty and veracity should be admissible to affect credibility. However, the statutory permission remains in force and does not so discriminate. The extent to which the matter may be pursued rests in the discretion of the trial court. *Mullin v. Builders Dev. & Fin. Serv., Inc.*, 62 Wn.2d 202, 381 P.2d 970 (1963).

The trial judge was satisfied that the extent to which the evidence was proven and argued did not go beyond the bounds of relevancy. In addition, he instructed the jury on the limitations upon the consideration of such evidence.[5] It was not erroneous to permit the introduction and consideration of the conviction and the pleas of guilty as presented.

## VI

### Excessiveness Of The Verdict

The defendant also contends that the jury verdict of $145,000 was the result of passion and prejudice. Each cause depends on its own facts and circumstances, and we must look to the injuries suffered in this case. *Kramer v. Portland-Seattle Auto Freight, Inc.*, 43 Wn.2d 386, 261 P.2d 692 (1953). In considering the evidence in the record on damages, we find substantial proof of injury upon which the jury could have based its award. The plaintiff, aged 36 at the time of trial, suffered a severe fracture and dislocation of his left hip; there is evidence of arthritic involvement in this hip; and he suffers from a permanent foot drop

---

[5]"You are instructed that a conviction resulting from a citation cannot be considered for the purpose of establishing the facts alleged in the complaint of a subsequent civil suit.

"Such a conviction, when based on a plea of guilty, may be considered by the jury only as an admission against interest.

"In considering such an admission against interest, the jury must view it in the light of surrounding circumstances and give it such weight as the circumstances warrant.

"Although such a plea of guilty conclusively determines the criminal case in which it was entered, there may be reasons other than the fact that he is guilty of the crime charged which induce a defendant to so plead." (Instruction No. 16.)

which will require him to walk with a brace for the rest of his life. He was terminated from one employment because of his disability.

■ In order for a jury verdict to be set aside because of its size, passion and prejudice must be so clearly present as to be unmistakable. When the amount of a verdict is reasonably within the range of the evidence admitted on the element of damages, it cannot be held as a matter of law to be so excessive as to establish that the jury was motivated by passion or prejudice. *James v. Robeck,* 79 Wn.2d 864, 490 P.2d 878 (1971). When the amount awarded exceeds rational bounds to the extent that the award could only have been reached by a jury that had forsaken sensible thought and reached its verdict out of outrage, animosity or spite, it is then, and only then, that a court should interfere with a jury verdict because of its size. *Johnson v. Marshall Field & Co.,* 78 Wn.2d 609, 478 P.2d 735 (1970); *Hogenson v. Service Armament Co.,* 77 Wn.2d 209, 461 P.2d 311 (1969); *Leak v. United States Rubber Co.,* 9 Wn. App. 98, 511 P.2d 88 (1973); *Allen v. Union Pac. R.R.,* 8 Wn. App. 743, 509 P.2d 99 (1973); *Duchsherer v. Northern Pac. Ry.,* 4 Wn. App. 291, 481 P.2d 929 (1971). The award was within the bounds of sensible thought.

We find no reversible error, and the judgment is affirmed.

FARRIS and JAMES, JJ., concur.